The next case on the call this morning, case number 104-861, 104-876, Consolidated, Brenda Tetrich v. Community Resource Center, Incorporated. Are the parties ready? May it please the Court, my name is Brian Hickey, representing the Appellant Community Resource Center. In this case, Richard Street murdered his wife on June 9, 2003. The issue for this Court to decide is whether Community Resource Center and the other medical providers owe a duty of care to the third party, Teresa Street, to warn her of a possible criminal act from her husband. A therapist does not owe a duty to a nonpatient to warn of a possible criminal act of a third party. There are a couple of general rules of law that I want to talk about. The first is that there's no duty by a physician or a therapist to a nonpatient as a general rule of law. The exception that's prominently cited in the briefs is the Supreme Court decision of Renslow talking about transferred negligence. And in that case, the Court found that when there is a special relationship, there can be an exception to that general duty where a duty is then owed to a nonpatient. That case, though, before the Appellate Court in Tetrich was the first and only case to find a special relationship under this doctrine of transferred negligence. The Court has refused since Renslow to extend the duty any further for any other relationship in the briefs cited to Kirk, Johnson v. Condell, and Doe, all Supreme Court cases that refused to extend it even to a parent-child relationship. The second general rule of law that's important here is that there's no duty generally to protect a person from a criminal act of a third party. As was pointed out in the initial statement, Richard Street murdered his wife. He then pled guilty to that crime. And he didn't plead guilty by reason of insanity. He pled guilty to an intentional act. There are exceptions also to protecting people from criminal acts of third parties, such as in the Supreme Court case of Pippin, where a security firm is specifically hired to protect property and persons. That's not what we have here. In this case we have a therapist who is providing mental health treatment to a patient. And the plaintiffs are requesting that a duty be extended, that therapists now owe a duty to warn to the wife who three days after the therapy and counseling session is murdered. The appellees believe that there is support for duty under the restatement second, section 324A. However, section 324A, which is the voluntary undertaking statute, talking about when one voluntarily undertakes a duty of care,  for consideration to render services to another, which he should or she should recognize as necessary for the protection of a third person, is subject to liability to the third person for physical harm, resulting from her failure to exercise reasonable care to protect this undertaking, if one of three things are met. In this case, and in any medical negligence case, the court has not found section 324 will apply in medical negligence cases. All the cases cited under section 324 are not medical negligence cases. Medical negligence is really a unique area of law that is separate from general negligence principles, and we find that the statutes by the legislature have provided specific requirements in order to plead and prove medical negligence cases. In this case, the plaintiffs were required and did file a 2-622 affidavit to support allegations of medical negligence, and they supported their complaint with an affidavit from a physician. In a general negligence case, those kind of requirements and additional hurdles are not required. The appellees are asking this court to extend section 324A, the voluntary undertaking to this medical negligence case, when no other court has done so, other than the Tedrick Appellate Court. So it's your theory that the decedent would have had to be a primary beneficiary of the treatment in order for this to apply? Correct. Just as Kirk and Renslow point out, Teresa Street would need to have been a patient of Community Resource Center for there to have been any duty. If this court does extend section 324 to a medical negligence setting such as this case, then analysis of section 324 to this case still shows that there is no duty. First, under the preamble of section 324, it must be shown that Community Resource Center undertook a duty to counsel Richard Street for the protection of Teresa Street. That is not why Community Resources provided treatment to Richard Street. They provided mental treatment to him to help him. A byproduct of that treatment, ideally, is to prevent him from harming himself or others. But the primary purpose of the treatment by Community Resource Center or any psychiatrist or psychologist or therapist or counselor is to help the patient who is in their offices, in their counseling room. Even if the court gets past that and believes that Community Resource Center should have known and recognized that their job was necessary to protect Teresa Street, the plaintiff must also show subparagraph C of 324A, that the harm is suffered because of reliance of Teresa Street on Community Resource Center. Although the plaintiff's complaint alleges reliance, that is simply a conclusion of law. There are no facts put in this case to outline that Teresa Street relied on the therapy provided by Community Resource Center on March 6th. Actually... There was discussions because Teresa Street called CRC after Richard Street had left. And there was a discussion where Teresa Street was advised, here is the number for the police. He is being discharged. He is going to see his physician right now. That is not providing her therapy and providing her counseling. It is providing her with information. So yes, CRC did provide Teresa Street with information, but they did not then assume any kind of physician-patient or therapist-patient relationship by virtue of having a telephone discussion with her. This comes to us under Section 2615, Motion 2. So as to the voluntary undertaking only, isn't it sufficient to get past the dismissal that we must take all facts as true? Well, the original motion did come under 265, but the co-defendant did file it under both 2615 and 2619. And I believe under 2619, the parties may bring up other evidence that the court can consider under 2619C. So the plaintiff will want this court to limit it to a 2615 analysis under the four corners of the complaint. But after our 2615 motion was filed, the plaintiff was allowed to amend the complaint two additional times. And in response to our motion to dismiss, it is the plaintiff who raised additional evidence that the court had considered in the appellate court concerning the threats of harm that were posed in the notes by one of the treating nurses, Amy Whipple. So I think it's ideally for the appellee, the court considers this as a 215 motion, but I believe because of the co-defendant's motion and the evolution of this case, it's really more as the 2619. But because of the level of factual disputes, conclusions that can be drawn from those facts, isn't this a matter that should be decided by the trial court jury? I don't believe so, Your Honor, because I believe that in this particular case, we're talking about facts, but the facts that we're talking about really are to establish whether or not there's a duty of care. We need to establish first and foremost, is there a duty of care to protect Teresa Street? Is there a duty to warn Teresa Street? We know from Kirk and Renslow that there is a requirement of a physician-patient relationship for there to be a duty. No question there is no physician-patient relationship here. We know under voluntary undertaking, the facts will establish whether or not there's a duty. And if there is no facts to show that Teresa Street relied on a warning, then there's no duty of care. And the Amy Whipple testimony attached in response to the plaintiff's brief shows that this lady who was murdered knew the morning before she came to the community resource center when her husband sat on her chair and said, I'm going to stab you in the chest and put his hands around her throat, that there was a risk of harm of staying with this man, yet she chose to do so. Warning her would have made no difference. She knew the threat. So it's all these facts are important, but the facts are important to go to whether or not there was a duty of care. So in conclusion, I believe this is the case. Your Honor, I believe that the facts show that the facts that she knew what he was capable of that day indicates that she was not relying on any warnings from community resource center. She received a telephone, she made a phone call to community resource center. She was told that this man was leaving. She was given a number for the police department and other people that could help her, but they didn't tell her, he's fine, don't worry about it. There's no facts such as that in the record that would indicate a reasonable person would rely on what treatment was provided by CRC. With counsel, wouldn't a reasonable person rely on the fact that they didn't tell her that he was extremely dangerous, that she would rely on the fact that he was okay? I don't believe so. And there, if you believe that a phone call has to be made to say that he is a danger or isn't a danger, would again create a duty by community resource center in every case to call a patient's family and report to them what the findings were of a private confidential therapy session. That is not what should happen through confidential therapy. That is confidential medical treatment. And I believe co-counsel is going to discuss the Mental Health and Disabilities Act that just doesn't allow those phone calls to be made, unless there's an imminent threat of harm. What would you have to have for an imminent threat of harm? What would you need to have? Well, under that Act, it actually is in the sole discretion of the mental health care provider and their conclusion as to whether or not there is an imminent threat of harm. The law does not say what an imminent threat of harm is, but it's up to the therapist or the counselor or the physician in their sole discretion to decide whether or not there is a risk of an imminent threat of harm. And if they conclude that there is not an imminent threat of harm, they cannot and must not disclose any information to anyone about that treatment session. Thank you. Good morning, Your Honors. My name is Steve Swofford. On behalf of Dr. Tabatabai, who was the psychiatrist who saw Dr. Richard Street about three weeks before the occurrence, and also on behalf of Dr. Goggin, who was Richard Street's family practice physician, saw him three days before the occurrence and basically told him that he had to see a psychiatrist, that a family practice physician couldn't pursue his treatment. A fundamental tenet of any physician-patient relationship is the undivided loyalty of the physician to the patient, including keeping confidences. And this Court, in both Doe v. McKay and in Norskog, recognized that this confidentiality was extremely important with psychotherapy. Otherwise, the patient, if he was afraid of disclosure of his confidences, was not going to be forthright with the physician, and the physician would not be able to adequately treat the patient. And those are common law principles. But there is a, and the General Assembly has also recognized and codified these principles in the Mental Health Confidentiality Act, which prohibits the disclosure of mental health records except in very narrow circumstances. And most of the circumstances are like peer review, reporting to governmental agencies, applying for benefits with governmental agencies, and whatnot. And as Mr. Hickey referred to, especially important to this case is Section 11 of the Confidentiality Act, which states that records and communications may be disclosed, not must or should be disclosed, may be disclosed when the patient is presented to the extent necessary, to the extent a therapist in his sole discretion determines that disclosure is necessary to prevent this imminent risk of serious physical injury. I, personally, I believe that that's What's the purpose? Counsel, what's the purpose of Section 11? The purpose of Section 11 Is it to protect the doctor or the patient? It's to protect the patient, in my view. Because the physician is always acting on behalf of his patient and his patient's best interest. And it's a recognition that in this area, that the mental health professional should be given discretion, sole discretion, which is pretty strong language, to make a determination of whether there's truly an imminent risk of harm and it should be disclosed. I mean, I can see where, in some sense, it does protect the physician, because it relieves him of any fear of liability for disclosure if he believes there's an imminent risk of harm. But ultimately, it's also protecting the confidentiality of the patient. You know, I just believe this language couldn't be clearer with regard to the disclosure being permissive by the use of the word may, and sole discretion is such a powerful word, that I don't, I think the appellate court's decision is totally inconsistent with this provision, and it should be caseless positive. It doesn't the ability for a doctor to, that he may disclose the information or may call someone who might be in imminent risk of harm mean that the purpose of that section would be to protect who might be, the person who might be harmed? Absolutely. And looking to that as an important factor? Of course. Well, obviously the General Assembly was concerned about a lot of things here, as your question and Justice Garmon's question has brought out, but it still leaves the sole discretion of the determination to the psychotherapist. Because we're in an area, and this has been pointed out in my brief, this has been pointed out in the brief of the amicus of medical society, that to the extent there have been studies on this, it's predicting what patients are dangerous is 30 to 50 percent accurate. So I think that this statute is probably a recognition by the General Assembly of that fact, that this is a very unpredictable thing, and it has to be left to the discretion of mental health professionals. Who, I'm sure if they're really afraid that their patient is going to harm himself or someone else, and will act in a way that's not going to harm him or her, is necessary. And I'd also like to point out with regard to the statutory scheme, that even beyond the mental health code, the General Assembly has determined, for instance, when a physician should report communicable disease. And there's just an area where the General Assembly has basically stepped in and acknowledged the basic confidentiality of patient confidences, but then has provided what it deems are the proper exceptions to when confidences are required. And I just think it's an area in which the General Assembly has done so much, not just with mental health care, with medical care generally, that the area has been basically co-opted or whatever, just by the General Assembly, and that its determination should be respected. I'll just have one more thing to talk about generally about duty. And the Court's well aware of duty as a question of law, depends on foreseeability, likelihood of injury, burden of guarding against the injury, and the consequences of imposing that burden. And just so in this general framework I referred to a few moments ago about mental health professionals only being able to predict dangerous patients at a 30 to 50 percent accuracy. So basically it's not very foreseeable, these types of injuries, nor is there a great likelihood, although it's a serious problem, I can't minimize that. The burden of guarding against the injury, well, you're imposing a duty upon a mental health therapist to give consideration to his own liability. And I'm sure he doesn't want to do that, but in the back of his mind if his duty is imposed upon him to report or face liability, he's going to be perhaps not acting always in the interest of his patient subconsciously, and I think the physician should be free to do that. And that also bears upon the consequences of requiring these disclosures. You know, that means if these statistics are right, the mental health professional will be ruled out. And there's nothing wrong in predicting who's dangerous and who's not 50 to 70 percent of the time. That means there will be lots of disclosures of confidences that shouldn't be disclosed because the people are not truly dangerous, and it could even result in the involuntary commitment of people who are truly not risks. But really I think the worst consequence of all of imposing a duty upon a mental health professional is the fact that the mental patient would no longer be assured of confidentiality. If he was going to fear disclosure of his secrets, he'd be less likely to seek treatment. And without psychiatric help, these patients would be more likely to act on their fantasies. So I think the public policy, as expressed both in the common law and by the General Assembly, favors what was the status quo, so to speak, prior to the appellate court's decision in this case. A very, very strong policy in favor of keeping patients' confidences, and so I would request that this court reverse the appellate court and affirm the judgment of the trial court. Thank you. May it please the court, my name is Chris Mantra and I represent the estate of Teresa Street and her children, Dolph and Dalton and Dillon Street. The question presented to the court in the incident case is whether a mental health care provider, after identifying an imminent and probable threat of harm to a specific party, has a duty to act or the discretion to allow a third party to be injured or killed with civil immunity. It's defendant's position that even if a therapist is completely certain that a mental health patient will kill a specific family member after leaving his office, that therapist has no duty to call the police to prevent the homicide. Like the majority of other jurisdictions that have been... It may not be true in this case, but what happens if the duty to the patient is not the same as the duty to the third party? I'm sorry, if the duty to the patient isn't the same? It's not the same as the duty to the third party. There could be a conflict. That isn't really something that I've considered. Certainly in this case, there isn't any adverse interests in that. Teresa Street certainly, I assume, wished to stay alive and Richard Street didn't want to go to jail and have his legs cut off. But I have not conceived of that. Certainly in Doe v. McKay, that was a situation in which there were adverse interests. In answering the voluntary undertaking question, couldn't it impact these other situations as well? As far as... I suppose that yes, that there could be situations in which there are adverse interests. Off the top of my head, for the purpose of voluntary undertaking, I can't think of a situation where an Illinois court has dealt with that. As far as the special relationship rule and transferred negligence, this court has addressed the effect of adverse interests with regard to the application of the special relationship rule. And this court has found in McKay that the special relationship rule doesn't apply in those situations. Mr. Montroy, do we have to agree with your transferred negligence? Do we have to agree to find as the appellate court did on the voluntary undertaking? No, that is not the case. And that is something that I wanted to bring up to this court. Can you put it in this context? Our case of Rhodes v. Illinois Central Gulf said that one, and I think this was defining the voluntary undertaking doctrine, one who undertakes gratuitously or for consideration to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking. Justice Freeman asked opposing counsel regarding the 2-6-15 nature of the allegations. As I understand the allegations in your complaint, I believe you allege that Richard retained the services of CRC and that CRC undertook either gratuitously or for consideration to render services to Richard. In other words, the complaint, unless I'm wrong here, does not allege either that CRC undertook to render services to Teresa or CRC undertook to render services to Richard for the benefit of Teresa. And that's why I asked my question with respect to transferred negligence. Absent any of those allegations, and obviously supporting facts down the line, doesn't the voluntary undertaking claim fail? With regard to, and this is an important distinction that this Court brought up in O'Hara, the Renssela type special relationship rule only applies to claims of transferred negligence. It doesn't apply to claims of direct negligence. And under Section 324A of the Restatement, defendants owe Teresa Street directly a duty of care to protect her. Now, Section 324A of the Restatement reads that a duty arises when one undertakes, when one person undertakes to perform services for another, which would be Person 2, which are necessary for the protection of Person 3. And this Court illustrated in Scott and Fetzer v. Montgomery Ward, that the services need not be provided by Person 1, that the services can be provided by Person 1 for Person 2, which are necessary for the protection of Person 3. That case was a fire case in which this company was hired to put fire protection systems within the home. Within one of the defendants, within one of the party's buildings. And because they did that negligently, a third party was injured. Do we have to overrule, then, the definition of voluntary undertaking as articulated in Rhodes v. Illinois Central Railroad? My understanding, quite honestly, Your Honor, I'm not off the cuff familiar with that definition. With Rhodes, but from what you said to me, it doesn't sound like that needs to be overruled. Certainly under Section 324A, the Person 1 can provide services to Person 2, which creates the duty to protect Person 3. And I'm not aware as to whether or not Illinois, whether this Rhodes case involves Section 324A of the Restatement. But this Court has adopted it. But I was right. I mean, there are no allegations that CRC undertook either gratuitously or for consideration to render services to Teresa. You're correct. Nor to Richard for the benefit of Teresa. Yes, you're correct. Okay. Well, what I did allege is that they provided services to Richard, which were necessary for the protection of Teresa. Now, as the Court brought up, the motions to dismiss were brought under both Section 2-615 and 2-619. So all of the allegations in the complaint that are pleaded must be accepted as true, as well as the fact under 2-619 the Court can consider outside evidence in making its determination. And a motion to dismiss can only be granted if both, if there are no facts that can be pleaded, which would give rise to a duty. So under your theory, it wouldn't make any difference whether, it really makes no difference that Teresa's, I guess, the wife, it could be anybody. If this guy had gone in and said, I'm going to kill the school principal, would that still be a voluntary undertaking? Well, they're two separate duties, certainly. Under the voluntary undertaking, as long as there's a specific identifiable party, that fulfills the foreseeability requirement under the restatement. But the, you know, as other courts have certainly noted, there must be specific identifiable threats of harm to a specific individual. So as long as the person's named, then that person can be, should be protected. So this would be pretty far-reaching. This would go beyond the husband and wife and the family relationship. This would extend to anybody. Well, and that's one difference between Section 324A of the restatement and the transferred negligence. The transferred negligence only applies to those in a special relationship, which is limited to the scope of the family. Now, under Section 324A, as long as the person knows that there's a specific identifiable third party that should be protected, then that extends to them, the duty. Would this be, isn't this quite a notable expansion of the law? I don't believe so, Your Honor. Is there any other case that you can cite that's close to this? Well, certainly not in the medical field. There have been other cases that have addressed this. I know that Pennsylvania and New York have applied Section 324A to medical providers. As far as Section 324A under Illinois law, certainly Pippin did not apply to somebody, to a party that was previously known. That was a security case in which a person in a housing project was injured. And because the Chicago Housing Authority contracted with a security company, a security agency, they had the duty to protect people within that building. So this conforms with what this Court has previously held with regard to the duty to protect. Also, I'd like to bring it to the Court's attention that the ---- Mr. Montro, I think the time is off a little bit. I think you have about another eight minutes. Okay, good. I was kind of worried about that. Thank you. Plaintiff's complaint stated three distinct causes of action which independently give rise to defendant's liability, but only two are addressed in this complaint. First, as was previously mentioned, plaintiffs claim that defendants are liable under a theory of transferred negligence and that due to the special relationship between Richard and his wife Teresa, the duty defendants owed to Richard transferred to his wife. Now, Doe v. McKay, which you have already mentioned, did say that the relationship between a mother and a fetus is perhaps singular and unique, right? Yes, it did say that. And it certainly is, right? I mean, the mother and child are connected, right? So there is a uniqueness. There certainly is a uniqueness to that relationship, but I don't believe that there's a uniqueness to the special relationship that limits it to only the mother and to the child. This Court has held, this Court specifically identified in Renslow that the husband-wife relationship was one that gives rise to transferred negligence. And it explained in Dinny v. Nadich that the protection of the family unit, that the reason for this was the protection of the family as a unit upon which our society is founded. Relying upon this Court's decision in Renslow and Dinny, the First District, the Second District, and the Fifth District appellate courts have repeatedly held that the marital contract was one that gives rise to derivative actions for transferred negligence. Also, I would like to briefly address Section 110.11. This Court holds that the rules of statutory construction require evaluating the statute as a whole, being mindful of the legislature's intent, and applying the statute in a manner that avoids absurd or unjust results. To begin with, looking at the statute. I just have to stop you. The defense would be wrong if they say no Illinois court has applied the doctrine of transferred negligence beyond the mother-unborn-child relationship. That's correct. A number of the First, Second, and Fifth Districts have held that the marital relationship, that the relationship between a husband and wife, gives rise to derivative actions for transferred negligence. And they have used that in the terms of loss, with regard to loss of consortium action. But this Court has not taken that position. This Court in Renslow specifically identified the husband and wife relationship as one that gives rise to transferred negligence. Can you cite the language? Derivative actions such as this Court held at 67 Illinois 2D, 348 at 357. Derivative actions such as those of a husband or parent for the loss of a wife's or child's services demonstrate that the law has long recognized that a wrong done to one person may invade the protected rights of one who is intimately related to the first. In these cases, because of the nature of the relationship between the parties harmed, the law has recognized a limited area of transferred negligence. Okay. And you're saying that stands for the proposition that transferred negligence can apply to parent-child, child-parent, sibling? I mean, where does it stop? Well, I believe that it stops at the bounds of the nuclear family. And that the purpose of this, as was recognized by this Court, was protecting the family. So if all other requirements for transferred negligence are met, in other words, the interests are not adverse, the harm is physical and traceable to the actions of the defendant and not of the decisions of the, you know, the second party, then I believe that husband-wife relationship or familial relationship should give rise to such a tort. The reason I'm wondering if you give broader context of the wording of the 1977 case, is that in Doe v. McKay, our 1998 case, as I indicated earlier, they talked about the unique nature and then said, and it is demonstrably different from the relationship that exists between a parent and an adult child. So I don't, and I'm not going to argue with you. Obviously, we're going to take a look at the case law, but you're not saying that this Court has definitively held, based on the facts of any case, that transferred negligence applies in those other relationships? No, no, that's correct. And in the quote that you just read from Renslow, that was in connection with the loss of consortium claim, was it not the reference that Renslow made as opposed to transferred negligence? No, my quote from the other case, Nadie v. my quote from Renslow, it was citing Dini v. Nadich, which was a loss of consortium claim. You're right, Your Honor. Really quickly, with regard to Section 11, I'd like to bring it to this Court's attention that it was correct, that the stated purpose, according to Senator Mehar, of the subsection 2 of the Mental Health and Developmental Disabilities Confidentiality Act, was to protect an individual who has been threatened by a patient where a therapist-patient privilege exists. The subject subsection does not foreclose the possibility of other mandatory disclosure requirements, as is shown by subsection I, which provides that records may be disclosed in accordance with provisions of the Abused and Neglected Child Reporting Act, which is an act that mandates disclosure. Furthermore, defendants' reading of the statute and position with regard to the statute causes absurd and unjust results. It is defendants' position that after a mental health care professional determines that disclosure is necessary to prevent, quote, and this is from the statute, the standard that is necessary, a clear imminent risk of serious physical or mental injury or disease or death that the statute gives mental health care professionals the ability to play God and to decide whether the targeted victim lives or dies. This is an absurd result that is contrary to the purpose of the statute. Lastly, imposing a duty in this case is not something that would be overly burdensome or will open the floodgates to rampant liability. On June 6, 2003, all defendants needed to do to save Teresa Street's life was to call the police, fill out a petition and certificate, and show up at a hearing within five days. This is part of defendants' job as mental health care providers. Also, an imposition of duty in this case will not create massive new liability. Liability based upon a Rensselaer-type special relationship, as I have mentioned, is limited to the scope of the family. Moreover, foreseeability limits the duty under Section 324A of the restatement to identifiable victims of probable harm. By recognizing defendants' duty under transferred negligence and the restatement, this court will provide legal protection necessary to prevent the tragedy that occurred to Teresa Street and her children Dalton and Dylan from happening to another Illinois family. Thank you. Any rebuttal? Are you sharing time on rebuttal? Are you sharing time? No, I'm not sharing time. Mr. Montroy's reading of Section 11, I guess, proceeds on the notion that a professional won't act like a professional and he'll deliberately not report even though he believes his patient is dangerous. I don't know. The legislature must have taken that into account when it said that this was in the therapist's sole discretion. I think the hypothetical that Mr. Montroy gives, while not impossible, is pretty far-fetched and remote. As I was sitting over there, there's something that I never thought about with regard to this voluntary undertaking issue, and I'd just like to throw it out without having thought it completely through. I'm not sure that a physician who undertakes to treat a patient can voluntarily undertake to provide services to another that's going to conflict with the interest of his patient. If he's doing his job, his primary and sole focus has to be on the patient. And finally, one other point. The notion of limiting this cause of action solely to a wife, this may be a little dangerous, too, but limiting this cause of action solely to a wife strikes me as leading to rather absurd results, and I think this was Justice Garmon's suggestion, by one of Justice Garmon's questions, that the mental health professional could have a situation where the threat was as clear as it could possibly be that the patient was going to injure an unrelated party. And so it just doesn't seem that it would be logical to proceed with the proposed cause of action based on husband-wife relationship, unless there are any other questions. That's all the comments I have. Thank you very much. Thank you. Case number 104861 and 104876 will be taken under advisement.